**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re BRUCE H. SLATER and JANE S. SLATER, | ) Case No. 10-62521-LYN |
| | ) |
| Debtors, | ) |
| | ) |

**MEMORANDUM**

This matter comes before the court on a supplemental application for compensation by Greenwood Law Firm, P.C. ("the Law Firm") for services rendered by Jason S. Greenwood, Esq., ("Counsel") counsel for Bruce H. Slater and Jane S. Slater ("the Debtors"). After considering the arguments of the parties and the evidence presented the Court makes the following findings of fact and conclusions of law.

*Facts*

On August 31, 2010, the Debtors filed a chapter 13 petition. The schedules disclosed that the Law Firm had received $2,500.00 from the Debtors prepetition and that the Law Firm had agreed to accept $300.00 per hour for legal services rendered. The schedules also disclosed that the Debtors paid the Law Firm $274.00 for the filing fee.

On June 20, 2011, the Law Firm filed a motion for supplemental compensation. Through the motion, the Law Firm seeks fees in the amount of $3,950.30 in addition to the $2,500.00. The motion also seeks additional expenses in the amount of $266.70. It appears from the motion that the

1

Law Firm has received reimbursement from the Debtors for other expenses.

*Discussion*

A court may award to a professional person reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses. 11 U.S.C. § 330 (a)(1)[1]. The court may award compensation that is less than the amount of compensation that is requested. 11 U.S.C. § 330(a)(2). In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (1) the time spent on such services; (2) the rates charged for such services; (3) whether the services were beneficial at the time at which the service was rendered toward the completion of a bankruptcy; (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (5) whether the compensation is reasonable based on the customary compensation

---

[1] Section 330(a) provides

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103--
(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
(B) reimbursement for actual, necessary expenses.
(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.
(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
(A) [so in the original] the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

charged by comparably skilled practitioners in cases other than cases under this title.  11 U.S.C. § 330(a)(3).

I.

Bankruptcy Courts in the Western District of Virginia authorize compensation to attorneys on the basis of a standard "no-look" fee in Chapter 13 cases.  The Law Firm seeks compensation on the basis of the lodestar method.

A.

As of the date that the Debtors filed their petition, this court allowed a no-look fee in the amount of $2,500.00.  As will be seen, no-look fees are permissible, are employed nation wide, are necessary for efficiency reasons, and reflect the market rate in this division and the reflect the statutory standard.

The Law Firm asks the court to make the award based on a lodestar analysis.  Courts, however, are not required to award fees based on a lodestar calculation.  See, e.g., In re Citation Corp., 493 F.3d 1313, 1320 (11th Cir. 2007).  ("Therefore, it is appropriate, but not required, for a bankruptcy court to use a lodestar analysis to review an investment bank's fees for reasonableness.")  No-look fees are permissible.  See In re Geraci, 138 F.3d 314 (7th Cir.1998) (Establishing presumptive fees in chapter 7 cases are permissible.).

Nor are no-look fees unusual.  No-look fees are awarded in Chapter 13 cases by the overwhelming majority of American bankruptcy courts.  In 2010, 80 of 92 Federal Districts surveyed awarded no-look fees in Chapter 13 cases.

No-look fees are also necessary for efficiency reasons.  If no-look fees were not used,

3

courts would be required to monitor fee applications.[2]  Doing so would consume an inordinate amount of court time.  During 2010 alone, 1481 Chapter 13 petitions were filed with the Clerk of the Court in the Lynchburg Division.   If the court could review and process one fee application every 30 minutes, monitoring fees would consume no less than 92 days per year, or 35% of the court's time.

Further, the no-look fee in this division reflects the standard set forth in Section 330(a)(3).  While each Chapter 13 case may have some nuance, virtually all consumer bankruptcy cases concern the same set of tasks at approximately the same level of complexity.  Consequently, they should consume approximately the same amount of time and should command approximately the same amount of skill and experience on the part of the attorney.

The fixed no-look fee awarded by this court in Chapter 13 cases is reasonable and reflects the market rate for Chapter 13 fees in this division.  The fee amount is based upon an experience with Chapter 13 cases that spans more than three decades.  If the fees allowed for attorney services in this division were below the market rate, there would be a shortage of bankruptcy attorneys in the marketplace.  During the last ten years, more than 12,000 Chapter 13 petitions were filed with the Clerk of the Court in the Lynchburg Division.  More than 95% were filed through counsel.  This Court knows of no Chapter 13 debtor who sought and could not find the services of a competent bankruptcy attorney during that time.  This is strong evidence that the allowed no-look fee in this division represents a market rate.

The Law Firm emphasizes the fact that it agreed with the Debtors to charge the fees that are requested.  That agreement is not determinative.  "[R]easonable value is not . . . always the

---

[2]   There can be no doubt that monitoring would be necessary.  The case at bar proves that point.  See Section II.B., *infra*.

price that a willing debtor has agreed to pay a willing attorney in the marketplace, for by enacting sections 329 and 330 of the Code, Congress placed limits on the role the market will be permitted to play in setting professional fees in bankruptcy cases." In re Geraci, 138 F.3d 314, 320 (7th Cir. 1998). (Citing In re Kenneth Leventhal & Co., 19 F.3d 1174, 1178 (7th Cir. 1994).

The Law Firm also asserts that this case is one that required more than the usual amount of time and expertise. The Court disagrees. The prosecution of this case required no more than the filing of a petition and concomitant pleadings, and a chapter 13 plan.    No adversary proceedings were filed. The Debtors do own three time shares and three boats, but these facts should not require much additional time and surely signal no complexity not seen in most Chapter 13 cases. At the hearing on this matter, the Chapter 13 trustee stated "I just don't see anything in this case that takes it beyond the realm of the ordinary to justify a fee that's 79 per cent[3] higher than what most attorneys get." This Court agrees.

On average, the no-look fee in this division reflects the market rate for Chapter 13 legal fees. Further, this court permits counsel to file a fee application if the Chapter 13 case requires significantly more than the average range of legal services. This is not such a case.   The no-look fee is appropriate.

B.

An analysis of the application reveals that the fees requested could not only not be granted in the amount requested, they could not be granted in any amount under the loadstar method because of the disorderly nature of the application.

Calculating the lodestar amount involves a two-step process, in which courts first determine

---

[3]    The fee request is actually 158% higher than the no-look fee.  Counsel seeks a total award of $6,450.30 and the no-look fee is $2,500.00.

the reasonable number of hours expended and then multiply that number by the appropriate hourly billing rate. The resulting figure is the allowable amount of compensation. 3 Collier on Bankruptcy, "Compensation of Officers", ¶ 330.04[3][c], p. 330-38 (15th ed. rev.).

The Supreme Court has promulgated twelve factors for courts to consider in evaluating fee applications. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). The twelve factors identified in Johnson which should guide a trial court's discretion in calculating a fee award are as follows:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to properly perform the legal service;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client;  and

(12) awards in similar cases.

Johnson, 488 F.2d at 717-19.   The Fourth Circuit has adopted the twelve Johnson factors.  Barber v. Kembrell's Inc., 577 F.2ed 216 (4th Cir. 1978).  The Fourth Circuit has specifically adopted the Johnson factors for use in determining fee awards under section 330(a) to professionals in

bankruptcy cases. Cf. Harman v. Levin, 772 F.2d 1150, 1152 (4th Cir. 1985) (Citing 2 Collier on Bankruptcy § 330.05, at 330-18 (15th ed. 1983) for the proposition that the Johnson "factors remain applicable to the determination of the reasonableness of fees awarded under the Code".)

The method by which the Johnson factors have been employed in the analysis of fee applications in the Fourth Circuit has changed over time. In 1980, the Fourth Circuit rendered an opinion instructing trial courts to:

> first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially Johnson factors 1 and 5. The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other factors, briefly explaining how they affected the award.

Anderson v. Morris, 658 F.2d 246, 249 (4th Cir. 1980) (Citing In re First Colonial Corp. of America, 544 F.2d 1291, 1298-1300 (5th Cir. 1977).

In 1984, the Supreme Court overruled this aspect of Anderson. See Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891(1984). In 1986, the Fourth Circuit discussed at length the analysis of the Supreme Court in Blum. The court concluded that the lodestar amount of attorney fees is the reasonable amount if the Johnson factors are properly considered and applied to the analysis.

> While the Supreme Court continues to endorse use of the Johnson factors in calculating fee awards, Blum, 104 S.Ct. at 1548, the Court has disapproved of the procedure endorsed by this court in Anderson. Out of a concern that upward adjustments of a lodestar figure can sometimes result in "double counting," id. at 1549, the Court has suggested that most Johnson factors are appropriately considered in initially determining the lodestar figure, not in adjusting that figure upward. According to the Court, "the critical inquiry in determining reasonableness [of a fee award] is now generally recognized as the appropriate hourly rate." Blum, 104 S.Ct. at 1547 n. 11. If the hourly rate is properly calculated, "the 'product of reasonable hours times [the] reasonable rate' normally provides a 'reasonable' attorney's fee within the meaning of [the applicable statute under which fees were awarded]." Id. at 1548

(quoting Hensley, 461 U.S. at 434, 103 S.Ct. at 1940).

Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir. 1986).[4]  The court continued noting that:

> . . . as a general rule, the novelty and complexity of a lawsuit will be reflected in the number of billable hours.  Where an experienced attorney spends fewer hours on a complex case due to special expertise, that "special skill and experience should be reflected in the reasonableness of the hourly rates.  Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award." [Blum] at 1549.  Similarly, " 'quality of representation' ... generally is reflected in the reasonable hourly rate."  Id.

Daly 790 F.2d at 1078. The court concluded by stating that a fee that is based on the lodestar amount, reasonable hours times a reasonable rate, "is presumed to be fully compensatory without producing a windfall." Id.  The lodestar fee is now the proper focus of the entire Johnson analysis in most cases. Id.

The application before the court could not be granted as filed.  First, the hourly rate is not one that the court would award counsel.   Second, not all time would be allowed.

Counsel's hourly rate is significantly higher than this court would allow.  Counsel asserts that his proper billing rate is $300.00 per hour.   An attorney's billing rate is determined by the market rate for an attorney of equal experience given the complexity of the services rendered.  In this case, Counsel has prosecuted five Chapter 13  cases in this District and a total of 27 cases during his six-and-one-half year legal career.  This court believes that the rate of $300.00 per hour is high for bankruptcy attorneys in the Western District of Virginia of equivalent experience .  This belief is supported by the following survey[5] of some other attorneys in the district.

---

[4]    Blum and Daly are civil rights cases, but this court has no reason to believe that either the Supreme Court or the Fourth Circuit would vary its analysis when considering an award of fees to a professional providing services in a bankruptcy case

[5]    This survey was conducted randomly by the court using the data base available to it in CM/ECF.

8

| No. | Date | Area of Practice | Experience | Hourly Rate |
|---|---|---|---|---|
| 1 | June, 2011 | Att for Trustee | 35 Years | $195.00 |
| 2 | June, 2011 | Att for Trustee | 10 Years | $195.00 |
| 3 | January, 2011 | Att for Trustee | 18 Years | $275.00 |
| 4 | January, 2011 | Att for Trustee | 6 Years | $200.00 |
| 5 | April, 2011 | Chapter 11 | 31 Years | $275.00 |
| 6 | April, 2011 | Chapter 11 | 23 Years | $275.00 |
| 7 | April, 2011 | Chapter 11 | 30 Years | $275.00 |
| 8 | April, 2011 | Chapter 11 | 27 Years | $275.00 |
| Avg. | | | 22.5 Years | $245.63 |

There are at least five attorneys with more than 20 years experience that are currently billing at an hourly rate that is less than $300.00. Four of those attorneys bill a lower rate for services rendered in Chapter 11 cases, which are generally more complicated than Chapter 13 cases. It is concluded from this survey and from this Court's experience that an appropriate hourly rate for Counsel would be in a range from $200.00 to $225.00. For purposes of this analysis, Counsel will be allowed a fee of $225.00 per hour.

We turn now to the number of allowable hours. The Court cannot discern the amount of time spent on individual tasks given the severe extent to which tasks are bundled. For example, Counsel has bundled 4.9 hours reflected in the following entry: "Continue reviewing client financial information; finalize all remaining schedules, Form 22 and ch. 13 Plan; meet with client . . . ; file all required petition and case materials and ch. 13 plan . . .; draft follow up email to Debtors with

recommendations . . ."[6] The Law Firm has billed a total of 22.98 hours[7] as reflected in the motion for compensation. The court concludes that Counsel spent 1.6 hours in consultation with the Debtors, spent .6 hours concerning appraisal(s), spent 16.78 hours preparing and filing pleadings, and spent 4 hours in travel.[8]

For purposes of this analysis, the 1.6 hours for client consultation will be allowed as well the .6 hours concerning the appraisal.[9]

Adjustment would have to be made to the 16.78 hours. The application includes time expended on clerical tasks that are billed at the attorney's hourly rate. Examples of such entries include the following: 8/9: download client credit report and forward copy to client; 8/31: File ch. 13 petition via ECF system. Forward copy of Notice of Bankruptcy Filing to clients via email; 9/10: file motion to extend time; and 9/24: file petition and plan. Clerical work is not compensable. If the court were inclined to grant fees under the lodestar method, the appropriate amount of adjustment could not be calculated the entries are bundled with services that appear to compensable. Because the clerical entries are bundled, it is impossible to ascertain the magnitude of the adjustment

---

[6] It should also be noted that the Law Firm's time records include fees and expenses in the same column. There are no separate totals for fees within the detailed time sheets.

[7] One entry (.68 hours) is not in tenths of an hour.

[8] There is one entry on the time sheet that has the court baffled. It is an "Administrative Entry" for $220.00, which entry evidently reflects the difference between the August billing total ($2,280.00) and the amount of the retainer ($2,500.00) received by The Law Firm prior to rendering any services. The entry is one that this court has never seen on a time sheet. To the extent that it is an adjusting entry, similar to those employed by accountants at the end of a fiscal period, it should be offset by a reversing entry. The Court, however, can find nothing in the billing statement that could be construed as a reversing entry. It can only be concluded that the result of such an entry coupled with the absence of a reversing entry is that The Law Firm was compensated $220.00 for no other reason than Counsel failed to render $2,500.00 worth of services during the first calendar month of the engagement. This of course would not constitute necessary, or even actual services. Because the court is, in essence, rebuilding the Law Firm's time sheets, no adjustment need be made for this entry.

[9] It should be noted that this court will accept a tax assessor's appraisal as reflected in public records, in the absence of any objection.

that would be necessary.  None of the time, however, can be allowed.

Most of the other part of the 16.98 hours appears to have been spent preparing the Debtor's petition and other pleadings.  Once an attorney has acquired the information, the preparation of the basic pleadings in a chapter 13 case should take no more than 7-9 hours, especially if the attorney has the assistance of an experienced staff.

Finally we turn to travel.  It appears that The Law Firm billed the full hourly rate for travel.  Travel is to be billed at three-quarter the normal hourly rate.  See C&J Oil Inc., 81 B.R. 398 (Bankr. WD.Va. 1987).  Again, an accurate adjustment would be impossible because The Law Firm has bundled travel with non-travel services.  The court estimates that Counsel billed a total of four hours for travel.  If this is correct, an adjustment of one hour may be made that will have the same effect of billing at 75% of the hourly rate.[10]  Additionally, the court does not believe that a single client should bear the entire brunt of travel expense.  One hour will be allowed for travel.

It is estimated that the total time allowed would be 10.2 - 12.2 hours.  At $225.00 per hour, this would warrant an award of $2,295.00 to $2,745.00, an amount that is very close to the no-look fee.  The lodestar analysis of the fee application in this case confirms that the no-look fee of $2,500.00 is appropriate.

## II.

The Law Firm also seeks reimbursement of expenses.  The following expenses are allowable and will be allowed in the total amount of $871.00:  Filing Fee ($274.00); Title Abstract Fee ($60.00); Appraisal Fee ($400.00); Pre-petition Credit Counseling ($49.00); Credit Report Fee ($50.00); and Post-petition Credit Education ($38.00).

---

[10] This mathematical conclusion is based on the *distributive law of multiplication* which may be expressed as **ax** + **bx** = **(a** + **b) x**.

The Law Firm also seeks reimbursement for copying charges and postage. The bankruptcy courts in the Western District of Virginia take such expenses into account when establishing the no-look fee. Accordingly, such expenses are included in the no-look fee and are not allowed in addition to such a fee. The fees will be allowed in the amount of $871.00.

*Conclusion*

The Greenwood Law firm shall be allowed compensation in this case in the amount of $2500.00 for fees and $871.00 for expenses.

**ORDER**

The Greenwood Law Firm, P.C., shall be and hereby is, allowed total compensation in this case in the amount of $2,500.00 for services rendered and $871.00 in reimbursement for expenses.

Upon entry of this Memorandum and Order the Clerk shall forward copies to Jason S. Greenwood, Esq., attorney for the debtors, the Chapter 13 trustee, and the United States trustee.

Entered on this  6th  day of September, 2011.

_____
William E. Anderson
United States Bankruptcy Judge